UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY HOWARD, | ) | Case No. 4:05 CV 1114 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | (Resolving ECF #38) |
| LT. BRENT TAGGART, et al., | ) | |
| | ) | Magistrate Judge James S. Gallas |
| Defendants. | ) | |

Plaintiff Henry Howard in his amended complaint (ECF #6) alleges that he is a prisoner incarcerated at FCI Elkton. In the first of his two counts he claims to have accidentally tripped and fallen in April 2001 twisting his right foot on the curb (Amended Complaint ¶¶5-6). Following this accident he alleges he received dilatory and inadequate medical treatment for his right foot injury which resulted in a massive staph infection leaving his right foot permanently deformed (Amended Complaint ¶¶ 6-17). In his second count Howard alleges that he was groped and grabbed in his genital area and during this "shakedown" by a guard who felt "a 'picket line' that was used to inject drugs into Plaintiff's system to treat his infected foot, and yanked the device which if he had succeeded in pulling out, Plaintiff would have bled to death." (Amended Complaint ¶¶18-21).

Defendants have moved for summary judgment (ECF #38). Plaintiff alleges jurisdiction for his complaint under the Federal Tort Claims Act (FTCA) (28 U.S.C.A. §1346(b) and §2671 *et seq.*). The amended motion for summary judgment argues against what are perceived as *Bivens*-based

4:05 CV 1114                                                  2

claims for constitutional violation as well as the assertion under the FTCA for monetary damages.**1**

Howard agrees that the case should be addressed as a *Bivens*-type action due to his reference to "clearly established federal rights (Howard's Opposition p. 1, ECF #30, 40, 41). While this had been a point of contention over whether the amended complaint contained *Bivens* allegations, they have been addressed as such in the amended motion for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255. The burden is upon the movant to demonstrate the absence of a genuine issue of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979),

---

[1] See *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

4:05 CV 1114                                                3

*cert. dismissed* 444 U.S. 986 (1979).  However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file.  *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340.  Once the nonmoving party has responded , the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park,* 255 F.3d 301, 304 n.1 (6th Cir. 2001).

*Count One Under Bivens:*

In Howard's response, he relies upon his previously filed opposition with accompanying declaration to establish that these are factual matters in dispute relating to the adequacy of the medical care he received (ECF #30, 41).  However Howard's declaration is inadequate.  The affidavit must be verified in accordance with 28 U.S.C. §1746.  That requires the statement be in writing "subscribed by him as true under penalty of perjury, and dated, and in substantially the following form . . . (2) if executed within the United States, its territories, possessions or commonwealths: 'I declare, (or certify, verify or state) under penalty of perjury that the foregoing is true and correct . . .'" Substantial compliance is required – a statement that the document is true accompanied by a declaration under penalty of perjury.  See *Matsuda v. Wada*, 101 F.Supp.2d 1315

4:05 CV 1114                                              4

(D. Haw. 1999). Howard omitted both the critical references to truth and penalty of perjury. His declaration contains only that he "swears that there still exists factual matters of deliberate indifference . . ." Consequently both requirements for verification under §1746 are lacking and the court is not presented with a verified complaint (See Howard's Opposition p. 4, ECF #30) and see Fed. R. Civ. P. 56(e); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001). Consequently with respect to the first count Howard lacks either affidavit or verified complaint to counter the defendants' motion for summary judgment, but considering his *pro se* status the court will review the federal defendant's motion for summary judgment to see if it is sufficient. The federal defendants have been certified by the attorney general as acting within the scope of their employment pursuant to 28 U.S.C. §2679(d)(1). The Federal Tort Claims Act, however, "does not extend or apply to a civil action against an employee of the Government — . . . which is brought for a violation of the Constitution of the United States." 28 U.S.C. §2679(b)(2)(A).

In *Bivens*, the Supreme Court created a private right of action for damages against federal officers who are alleged to have violated a citizen's constitutional rights. See *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 519, 151 L.Ed.2d 456 (2001); *Bivens*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Although *Bivens* involved Fourth Amendment rights, its principle was extended to the Eighth Amendment in *Carlson v. Green,* to promote a right of action against individual prison officials when the only alternative was a Federal Tort Claims Act claim against the United States, which the Supreme Court believed was insufficient to deter unconstitutional acts by individuals. *Carlson*, 446 U.S. 14, 18-23, 100 S.Ct. 1468, 64 L.Ed.2d 15

4:05 CV 1114                                                       5

(1998); *Correctional Services Corp.*, 534 U.S. at 67-68, 122 S.Ct. at 520; and see 28 U.S.C. §2679(b)(2).

Howard, as a prisoner asserting a *Bivens* claim against individual defendants for violations of his Eighth Amendment rights through their failure to provide sufficient and proper medical care, must establish that defendants showed "deliberate indifference" to his "serious medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Terrance v. Northville Regional Psychiatric Hospital,* 286 F.3d 834, 843 (6th Cir. 2002). Such a showing has both objective and subjective components. See *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Thaddeus-X v. Blatter*, 175 F.3d 1378 (6th Cir. 1999). The objective component requires a showing of 'serious medical need' whereas the subjective component requires a showing that the defendant actually knew he was creating a substantial risk of harm and deliberately disregarded that risk by failing to take the measures to abate it. See *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling*, 509 U.S. at 35-36; *Tucker v. Rose*, 955 F.Supp. 810, 815 (N.D. Ohio 1997). As the Supreme Court emphasized in *Wilson*, 'the source of the intent requirement is . . . the Eighth Amendment itself, which bans only cruel and unusual punishment.' 501 U.S. at 300. The Supreme Court elaborated that 'if the pain inflicted is not formally meted out as *punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify.' *Id.*

4:05 CV 1114                                              6

A court evaluating a prisoner's Eighth Amendment *Bivens* complaint must 'inquir[e] into a prison official's state of mind when it claimed that the official has inflicted cruel and unusual punishment,' (*Wilson*, 501 U.S. at 299), because only deliberate indifference 'can violate the Eighth Amendment[;] allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . . diagnos[is]' simply fail to establish the requisite culpable state of mind. *Id.* at 297. (emphasis and internal citations omitted) (quoting *Estelle*, 429 U.S. at 106). This distills to the basic element that 'a prison official cannot be found liable under the Eighth Amendment. . . unless the official knows of and disregards an excessive risk to inmate health or safety.' *Farmer*, 511 U.S. at 837.

Howard "cannot rely on the hope that the trier of fact will disbelieve the movants' denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.3d 1472, 1479 (6th Cir. 1989). The trial court has no obligation to search the record to establish that it is "bereft of a genuine issue of material fact." *Id;* and see *Chicago Title Ins. Corp. v. Magnusson*, 487 F.3d 987, 995 (6th Cir. 2007). Rule 56 allocates the duty of sifting through the record, "to the opponent of the motion, who is required to point out the evidence, albeit it evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007).

In their motion for summary judgment the "federal defendants" point out that Howard was diabetic prior to being incarcerated and that he admits that he received treatment throughout his incarceration. He admits that his ankle injury was treated and placed in a cast for six to eight weeks. After the cast was removed, Dr. Frisco discovered there was an ulcer and callus on the toe. Howard

4:05 CV 1114                                              7

contends that the ulcer on his toe began draining as a result of improper treatment but he admits that he was received epsom salt soaks and cleaning and wrapping with gauze. Further a culture was taken on the ulcer and found to be infected. At that point Dr. Manenti ordered that Howard be sent to the hospital immediately. Howard concedes that his toe had never deteriorated to its present condition prior to his hospitalization and after surgery, he admits that a podiatrist regularly examined his foot and trimmed the ulcer on his toe.

In his unsworn declaration Howard contends that Mrs. Simpson was sued because she kept "shooing" him from medical treatment threatening to lock him up and later classified his problem as "charcoal foot" and trivialized it until Dr. Frisco later determined there was a broken bone which needed a cast. However, these allegations do not align with those in the amended complaint. In the amended complaint Howard alleges that Mrs. Simpson merely was the x-ray technician who performed the x-ray on his foot who was again ordered to perform another x-ray after she, "had shouted at Plaintiff that she should stop bugging everybody." (Amended Complaint ¶¶5, 9). These allegations in the amended complaint do not claim that she interfered with his medical treatment but only that she presented an ill-demeanor. The "federal defendants" add that in deposition Howard explained that Mrs. Simpson could not find his x-rays (Howard Dep. 94-96). In any event, the federal defendants have shown that Howard's testimony from his deposition and the medical record incorporated through the Barnes' affidavit (ECF #32-2) negates an Eighth Amendment violation and consequently they prevail against his *Bivens*-based claim of constitutional violation related to medical care.

4:05 CV 1114                                                         8

*Count One Under Federal Tort Claims Act:*

Howard contends that the officials at FCI Elkton provided him with negligent care from 2001 through 2004 and thus he filed suit under the FTCA against these federal employees. Liability under 28 U.S.C. §1346(b) is governed by state law and this extends to claims of medical malpractice. See *Vance v. U.S.*, 90 F.3d 1145, 1148 (6th Cir. 1996); *Sellers v. U.S.*, 870 F.2d 1098, 1101 (6th Cir. 1989); and see *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994)( In a federal tort claims action it is the law of the state where the events occurred that controls.). The government argues that the applicable state standard is from *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976), which sets out the medical malpractice standard for physicians in the state of Ohio. [2]

With respect to the allegations concerning FCI- Elkton:

> "[I]n order to maintain a cause of action in medical malpractice, three elements must be proved. Plaintiff must establish the applicable standard of care, usually through expert testimony, show a negligent failure on the part of the defendant to render treatment in conformity with the standard of care; and demonstrate that the resulting injury was proximately caused by defendant's negligence." *Ulmer v. Ackerman*, 87 Ohio App.3d 137, 140, 621

---

[2] Howard does not allege that he exhausted the prison grievance process consistent with the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). Such allegations are no longer critical to raising claims for constitutional injury. See *Jones v. Bock*, - U.S.-, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (overruling pleading requirements of *Knuckles-El v. Toombs*, 215 F.3d 640 (6th Cir. 2000) and *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998). In *Jones*, exhaustion of the administrative prison remedies was held to be an affirmative defense under the Prison Litigation Reform Act with respect to a civil rights claim. In contrast exhaustion of the administration prelignation process is jurisdictional under the Federal Tort Claims Act. See 28 U.S.C. §§2401(b); 2675(a). Disposition by the federal agency is a jurisdictional prerequisite under §2675(a) "for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee..." Howard has attached exhibits to his amended complaint purporting to establish exhaustion of administrative prison remedies. Defendants do not address this matter. In light of *Jones*, and defendants' lack of addressing the issue, perhaps the kinder and gentler approach should be taken to allow amendment to cure this deficiency in the jurisdictional allegations in the event this becomes necessary. See *Miller v. Stanmore*, 636 F.2d 986 (5th Cir. 1981); *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980). Accordingly the Court will ignore this potential cause for dismissal for nonexhaustion at this time.

4:05 CV 1114                                             9

> N.E.2d 1315, 1317 (1993); *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 77 O.O.2d 184, 346 N.E.2d 673 (1976).

The same general standard for medical malpractice by a physician applies to medical malpractice claims brought by prisoners. *Buerger v. Ohio Dept. of Rehab. & Corr.*, 64 Ohio App.3d 394, 397-98, 581 N.E.2d 1114 (1989). Prisoners, as all plaintiffs, must establish more than mere negligence to sustain an action against medical personnel or the institution. See *Sloan v. Ohio Dept. of Rehab. & Corr.*, 119 Ohio App.3d 331, 334, 695 N.E.2d 298 (1997); *Promen v. Ward*, 70 Ohio App.3d 560, 565, 591 N.E.2d 813 (1990).

"Failure to establish the recognized standards of the medical community has been fatal to the presentation of a *prima facie* case of malpractice by the plaintiff[ ]." *Bruni* at 131; *Buerger*, at 398. Plaintiff's failure to produce expert evidence on the standard of care or medical records showing lack of care generally results in dismissal. *Buerger* at 398; and see *Sommer*, 317 F.3d at 694-95. The degree of care required must generally be proven by expert testimony. *Bruni*, at 131-32. Further, an essential element of a medical malpractice claim is proof that the injury was proximately caused by the failure of the physician to adhere to the standard of care. *Id.*

Expert testimony is not necessary under Ohio's "common knowledge exception" to the general rule requiring expert opinion. *Buerger*, at 400-01. The common knowledge may apply in matters of gross inattention to obvious situations. *Buerger*, 64 Ohio App.3d at 399; *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 196 N.E.2d 592, 26 Ohio Op.2d 170 (1964). This exception

4:05 CV 1114                                                    10

has limited scope in matters involving diagnosis and treatment. *Id.* at 400; *Whiteleather v. Yosowitz*, 10 Ohio App.3d 272, 275, 461 N.E.2d. 1331 (1983).

The March 13, 2004 impression from Dr. Jurenovich incorporated in the Barnes affidavit (ECF #32-2 pg. 5-6 of 195) demonstrates that Howard's foot problems are not simply due to a 2001 fracture, but due to multiple causes:

> The patient has a long history of poorly controlled diabetes as well as gout and hypertension.  He takes numerous medications for numerous medical problems as well.  I last saw this patient for right-foot fracture problems in June or July of 2003.  At that time his right fifth metatarsal fracture appeared to be healing quite nicely.  The patient apparently sustained some further problems with his foot a few months later where x-rays performed in either September or October of 2003 confirmed fractures of the base of the second, third, fourth and fifth metatarsal bones.  He has been battling with some infection problems around the great toe region for the past several months as well and has been under the care of Dr. Quinn as well as the prison podiatrist for this problem.  I was also able to review some x-rays this morning performed three or four days ago as well as the patient's medical chart over the past year or so.  His most recent x-rays I reviewed this morning of his foot were from March 11, 2004.  The patient is on antibiotics at the time of my examination today.
>
> Examination of the patient today reveals the patient has minimal pain and swelling due to his long history of diabetic neuropathy, both legs and feet.  His right great toe appears to be swollen compared to his left great toe.  There is some scant drainage coming from the base of the great toe, especially in the first and second toe web space.  There is a small, open ulcer over the soft tissue tuft of the great toe.  Once again, he is on antibiotics and has been so far for the past several weeks.  There is some mild swelling of the foot.  he has no pain over the fracture areas of the base of metatarsals two, three, four and five.  My review of the chart shows he has been receiving consistent foot care in regards to his diabetic foot infection issues over the past several months from several physicians and nurses at your facility.
>
> My review of this patient's chart x-rays and examination today show that he may be well headed for Charcot diabetic foot problems as well and I

4:05 CV 1114                                                    11

> discussed this disease syndrome with him today in some detail. He states he was treated with a cast last winter by the podiatrist as well as foot orthotics in an attempt to slow down his Charcot foot issues.
>
> IMPRESSION:
>
> Diabetic foot with possible osteomyelitis and nonunion fracture of the proximal right two, three, four and five metatarsal bones with possible early Charcot foot disease.

Clearly Howard's claims of medical malpractice are beyond resolution under the common knowledge exception due to multiple foot injuries combined with complications due to diabetes including neuropathy. Further Howard admitted that the deterioration of his toe was not as severe at the time of his imprisonment as it was following this hospitalization. This is not a situation when confronted by a layman it would be understood from common knowledge and experience. Consequently, Howard fails to sustain his claim under the FTCA medical malpractice.

*Count II under Bivens:*

Next with regard to the arguable *Bivens* claim asserted against Lt. Taggart under Count II the federal defendants allege Lt. Taggart had conducted a search to insure that an unknown object under Howard's clothing did not pose a substantial risk to staff and inmates.

Howard submits an affidavit in support of his allegations under the second count (See attachment to Amended Complaint). The "federal defendants" offer no affidavit or deposition testimony to counter Howard's affidavit with respect to the second count of the amended complaint. Howard alleges on May 8, 2004 while he was leaving the inmate dining area he was stopped by Lt.

4:05 CV 1114                                                                      12

Taggart who called him over to conduct a pat-down search. Lt. Taggart asked if he had anything in his pockets to which Howard replied there was nothing but Taggart stuck his hand down Howard's right pocket and used his glove to search his groin. Howard states that Lt. Taggart "was quick in his movements of his hand and hit one of my balls." (Howard Aff. ¶4). He further states that he felt abused because Lt. Taggart continued to search the area of his groin "in a very rough manner." (*Id.*) Through his pocket Lt. Taggart squeezed Howard's genitals and then continued to search down Howard's legs, moved up to the shoulder area and patted this area down "heavily" because he felt something under Howard's shirt. Howard explained that he had a "picket line" that was used to inject drugs into his system to treat his infected foot and a line was attached to his chest. Howard states that he was afraid Lt. Taggart was going to pull the line out but at that time someone else said "don't pull on that line," and then Lt. Taggart released him. (*Id.*)

A most reasonable place to start with respect to the seizure and search of Howard's person is the Fourth Amendment. The Fourth Amendment prohibits only unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Reasonableness is determined by balancing the need for the particular search against the invasion of personal rights that the search entails. *Id.*, 441 U.S. at 559. Courts must consider (1) the scope of the intrusion, (2) the manner in which it is conducted, (3) justification for initiating and the place in which it was conducted. *Id.* Merely patting down the breast and crotch area does not turn a pat-down search into an intrusive search requiring reasonable suspicion as justification for initiating it. As pointed out in *Terry v. Ohio*, 392 U.S. 1, 17 n. 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) quoting Priar & Martin, Searching & Disarming Criminals, 45 J. Crim. L.C. & P.S. 41 (1954) describing the standard pat-down for

4:05 CV 1114                                              13

weapons as "[T]he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin area about the testicles, and entire surface of the legs down to the feet." A pat-down search is not unusually intrusive when it merely running the hands over the outer garments including the crotch area. See *U.S. v. Rodney*, 956 F.2d 295, 298 (D.C. Cir. 1992). Lt. Taggart, however, is alleged to have placed his hands in the prisoner's pockets. This particular act was distinguished in *Terry*. *Terry*, 392 U.S. at 29 (Officer McFadden patted down the outer clothing of petitioner and his two companions. He did not place his hands in their pockets or under the outer surface of the garments until he had felt weapons . . .").

Lt. Taggart claims qualified immunity (Amended motion p. 10). Government officials performing discretionary functions are shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights by which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Sixth Circuit has vacillated between a three-step or two-step analysis when evaluating the assertion of qualified immunity. See *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996); *Williams v. Mehra*, 186 F.3d at 691 (3-step test qualified immunity analysis); *Dunigan v. Noble*, 390 F.3d 486, 491 n. 6 (6th Cir. 2004) (two-step analysis); *Estate of Carter v City of Detroit*, 408 F.3d 305, 310 n. 2 (6th Cir. 2005) (advocating two-part test in light of *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), but conceding "the three-step approach can be said to capture the holding of *Saucier*. . .") The court must inquire, whether "[t]aken in the

4:05 CV 1114                                        14

light most favorable to the party asserting the injury to the facts alleged shows the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. [3]

Fourth Amendment claims are evaluated under the standard of objective reasonableness. See *Graham v. Connor*, 490 U.S. 396, 397, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989). [4] Under the Supreme Court's two-prong test, Howard has carried his burden of showing the necessary facts when viewed in a "light most favorable" to establish that the officer's conduct violated the constitutional right due to the intrusive nature of the pat-down search which went beyond a pat down of the outer garments in the crotch area.

---

[3] The second step under *Saucier* is "whether the right was clearly established." *Id.*, 533 U.S. at 201. Whereas, under the three-step approach in *Dickerson*, the court must determine whether a constitutional violation occurred, whether the right violated was clearly established and finally whether plaintiff has alleged sufficient facts and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right." *Id.*, 101 F.3d at 1157-58. Employing the third step in *Dickerson* would in the undersigned's view lead to confusion, rather than being helpful because the reliance simply on objective reasonableness is more directed to Fourth Amendment claims rather than Eighth Amendment claims which require proof of objective and subjective components.

[4] *Graham* explained:

Differing standards under the Fourth and Eighth Amendments are hardly surprising: the terms "cruel" and "punishments" clearly suggest some inquiry into subjective state of mind, whereas the term "unreasonable" does not. Moreover, the less protective Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 1412, n. 40, 51 L.Ed.2d 711 (1977). The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts like "malice" and "sadism" have no proper place in that inquiry.(footnote omitted) *Graham v. Connor,* 490 U.S. at 398-399, 109 S.Ct. at 1873.

4:05 CV 1114                                                                          15

Next, in applying *Saucier*'s sequential analysis, the court must inquire "whether the right was clearly established." *Saucer*, 533 U.S. at 201, 121 S.Ct. at 2156. "Qualified immunity shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances . . . confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004), citing *Saucier*, 533 U.S. at 206. Thus, "[i]f the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability, or, indeed even the burdens of litigation." *Brosseau*, 543 U.S. at 198. Accordingly, there must be "fair warning" that the conduct was clearly unlawful in the situation confronted. *Brosseau*, 543 U.S. 198-199.

The court notes that *Terry* involved the stop and frisk of an individual for suspicious activities, whereas, Howard was a convicted prisoner where there certainly is more justification for Fourth Amendment intrusions. See *Bell v. Wolfish*, 441 U.S. at 558. Further, case law illustrating Fourth Amendment violations in the prison setting has required more than a mere "groping and grabbing" to violate the Fourth Amendment. For example, in cases approximating this situation as *Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995), a Fourth Amendment claim was sustained on allegations that the prison guard conducted daily strip searches, made sexual comments about the prisoner's genitals and buttocks and rubbed the prisoner's buttocks with a night stick. Similarly in *Watson v. Jones*, 980 F.2d 1165, 1165-66 (8th Cir. 1992), allegations sustained a Fourth Amendment claim based on daily routine pat-down searches that consisted of tickling the genital, anus, lower stomach and thigh areas so they were both sexually harassing and physically intrusive. These examples of adjudication of Fourth Amendment violation stand in stark contrast to the situation set

4:05 CV 1114                                            16

forth in Howard's affidavit. "Fair notice" existed for much more egregious behavior than occurred according to Howard. Further insofar as Howard alleges excessive force, the officer is authorized to apply reasonable force to effectuate his investigation. See *Graham*, 490 U.S. at 396.

Arguably, Howard's second count also presents a claim under the Eighth Amendment. The Eighth Amendment prohibits cruel and unusual punishment in a sense of the unnecessary and wanton infliction of pain. See *Hudson v. McMillan*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The federal defendants refer the court to the case *Jackson v. Madery*, 158 Fed. Appx. 656 (6th Cir. 2005), in which in the unpublished decision the court relies on precedent from the Second, Eighth, and Ninth Circuits that recognize sexual abuse of prisoners by corrections staff may violate the Eighth Amendment but generally no single incident is enough to be "objectively, sufficiently serious." *Id.* at 662. Howard only alleges that the one incident and this is insufficient to establish an Eighth Amendment constitutional claim of cruel and unusual punishment. Again there is no

4:05 CV 1114                                                    17

violation of a clearly established Eighth Amendment right. [5] Accordingly, Lt. Taggart is entitled to qualified immunity with respect to the *Bivens* allegations under the second count.

*Count II under FTCA*:

Generally, [a]ny claim arising out of assault, battery, false imprisonment, false arrest [etc.] is excepted from the FTCA's scope. See 28 U.S.C. §2680(h). However, the actions of Lt. Taggart were within the scope of his employment as certified by the Attorney General, accordingly based on the arguments presented with the motion for summary judgment it appears that Howard can sustain the claim for assault and battery in relation to Lt. Taggart's search despite the general exception contained in 28 U.S.C. §2680(h). Compare *Flechsig v. U.S.*, 991 F.2d 300, 301 n. 1 (6th Cir. 1993) (corrections officer was not "investigative or law enforcement officer). The alleged assault did occur during "a search, seizure or arrest". See *Pooler v. U.S.*, 787 F.2d 868 (3rd Cir. 1986); and see *Picariello v. Fenton*, 491 F.Supp. 1026, 1037 (M.D. Pa. 1980) (United States

---

[5] As explained in *Jackson:*

The Second Circuit, among other circuits, has held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder,* 105 F.3d 857, 860-61 (2d Cir.1997). See also *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir.1997); *Jordan v. Gardner*, 986 F.2d 1521, 1524-31 (9th Cir.1993) (en banc). The Second Circuit stated that "there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie*, 105 F.3d at 861. In *Boddie*, the plaintiff, a male prisoner, alleged that a female prison guard squeezed his hand, touched his penis, and made sexually suggestive comments, and on a separate occasion told him to take off his sweatshirt and twice pinned him to a door with her body. Id. at 859-60. The Second Circuit concluded that "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' Nor were the incidents cumulatively egregious in the harm they inflicted." Id. at 861. The alleged incidents, the court held, did "not involve a harm of federal constitutional proportions." Ibid. The alleged episode at issue here was isolated, brief, and not severe. While certainly to be condemned if true, it did not rise to the level of a violation of Jackson's constitutional right to be free from cruel and unusual punishment.
*Id.*, at 662.

4:05 CV 1114                                         18

conceded that employees of the Federal Bureau of Prisons involved in the processing of prisoners were investigative or law enforcement officers for purposes of 28 U.S.C. §2680(h)). Accordingly, the FTCA claim of assault and battery by the prison guard is actionable and is to be evaluated as it would under state law. *Picariello*, 491 F.Supp. at 1038; and see 28 U.S.C. §1346(b).

Analogizing Lt. Taggart to a local jailer, and given the fact that he was acting within the scope of his employment, requires Howard to establish that Lt. Taggart's acts or omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner under Ohio's "Political Subdivision Tort Liability Act." (Ohio Rev. Code Chapter 2744). [6]

> "Malice" has been defined as "the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook v. City of Cincinnati,* 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814 (Ohio Ct.App.1995) *citing Jackson v. Butler Cty. Bd. of Comm'rs.,* 76 Ohio App.3d 448, 602 N.E.2d 363 (Ohio Ct.App.1991). "Bad faith," on the other hand, is defined as "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id.* "Wanton misconduct" is characterized by "the failure to exercise any care whatsoever." *Cook,* 103 Ohio App.3d at 90-91, 658 N.E.2d 814 *citing Fabrey v. McDonald Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35 (Ohio 1994) ("mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor."); *Hawkins v. Ivy,* 50 Ohio St.2d 114, 363 N.E.2d 367 (Ohio 1977). "Reckless conduct" occurs when a person "does an act or intentionally fails to do an act which it is his duty to the other

---

[6] In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
  (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities.
  (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

Ohio Rev. Code §2744.03(A)(6)(a) and (b).

4:05 CV 1114                                   19

> to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Thompson v. McNeill,* 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (Ohio 1990).

*Davis v. City of East Cleveland, Ohio,* 2006 WL 753129, *14 (N.D. Ohio 2006)

Howard does not demonstrate that the search, as viewed as a tort of assault or battery, was conducted with perversion, of will or perverse discharge of a known risk of the possibility of injury. See *Vasquez v. Village of Windham*, 2006 WL 3478417 at *7, 2006 - Ohio - 6342 (Ohio App. 11 Dist.) citing *Tighe v. Diamond*, 149 Ohio St. 520, 527 (1948).  The standard of wanton conduct is high.  *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31, 35 (1994). Howard must show that Lt. Taggart was aware that his actions would result in injury.  See, *id*., citing *Roszman v. Sammett*, 26 Ohio St.2d 94, 97, 55 O.O.3d 165, 166, 269 N.E.2d 420, 423 (1971). Recklessness requires disregard for the safety of others.  *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d at 35, citing 2 Restatement of the Law 2d, Torts (1965) at 587, Section 500.  Howard thus must show that Lt. Taggart acted to endanger him.  Howard, however, claims that the "picket line" was not removed.  Howard fails to show wanton or reckless conduct.  Consequently Howard has failed to sustain his claim by presenting genuine issues of material fact to establish liability under Ohio's Political Subdivision Liability Act and thus negates liability under the Federal Tort Claims Act.

4:05 CV 1114                                             20

Accordingly, the amended motion for summary judgment is granted with respect to both counts of the amended complaint.

s/James S. Gallas<br>United States Magistrate Judge

Dated: September 27, 2007